331 So.2d 40 (1976)
Jerome BOURQUE, Jr., Plaintiff-Appellee,
v.
Adrien DUPLECHIN et al., Defendants-Appellants.
No. 5396.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1976.
Rehearings Denied May 21, 1976.
Writs Refused July 1, 1976.
*41 Edwards, Stefanski & Barousse by Homer E. Barousse, Jr., Crowley, Lucius A. Hornsby, Jr., Lafayette, for defendants-appellants.
Voorhies & Labbe by D. Mark Bienvenu, Lafayette, for plaintiff-appellee.
Before WATSON, CUTRER and PETERS, JJ.
WATSON, Judge.
Plaintiff, Jerome Bourque, Jr., filed this suit to recover damages for personal injuries received in a softball game. Made defendants were Adrien Duplechin, a member of the opposing team who inflicted the injuries, and Duplechin's liability insurer, Allstate Insurance Company. The trial court rendered judgment in favor of plaintiff against both defendants and defendants have appealed. We affirm.
Both Duplechin and Allstate contend that the trial court erred: in not finding that Bourque assumed the risk of injury by participating in the softball game; and in failing to find that Bourque was guilty of contributory negligence. Defendant Duplechin also contends that the trial court erred in finding him negligent and in finding that the injury to plaintiff Bourque occurred four to five feet away from the second base position in the general direction of the pitcher's mound. Allstate further contends that the trial court erred in finding coverage under its policy which excludes injury intended or expected by the insured.
On June 9, 1974, Bourque was playing second base on a softball team fielded by Boo Boo's Lounge. Duplechin, a member of the opposing team sponsored by Murray's Steak House and Lounge, had hit the ball and advanced to first base. A teammate of Duplechin's, Steve Pressler, hit a ground ball and Duplechin started to second. The shortstop caught the ground ball and threw it to Bourque who tagged second base and then stepped away from second base to throw the ball to first and execute a double play. After Bourque had thrown the ball to first base, Duplechin ran at full speed into Bourque. As Duplechin ran into Bourque, he brought his left arm up under Bourque's chin. The evidence supports the trial court's factual conclusion that the collision occurred four or *42 five feet away from the second base position in the direction of the pitcher's mound. Duplechin was thrown out of the game by the umpire because of the incident.
Pertinent to the trial court's decision was the following testimony:
Plaintiff Bourque, age 22 at the time of trial, testified that he is 5'7" tall. He was well out of the way when he was hit, standing four or five feet from second base and outside the base line. He knew there was a possibility of a runner sliding into him but had never imagined what actually happened, which he regarded as unbelievable under the circumstances.
Gregory John Laborde, a student at Tulane Law School, testified that he witnessed the incident from the dugout along the first base line and saw Duplechin turn and run directly toward Bourque who was standing four or five feet from second base toward home plate. Duplechin did not attempt to slide or decrease his speed and his left arm came up under Bourque's chin as they collided. Duplechin had to veer from the base path in order to strike Bourque.
Donald Frank Lockwood, baseball coach at USL, testified as an expert witness that: softball is a noncontact sport; in a forced play to second such as this, the accepted way to break up a double play is by sliding.
Steve Pressler, who hit the ground ball that precipitated the incident, testified that the sides were retired as a result, because the collision was a flagrant violation of the rules of the game.
Duplechin admitted that he ran into Bourque while standing up in an attempt to block Bourque's view of first base and keep him from executing a double play. Duplechin also admitted that he was running at full speed when he collided with Bourque, a much smaller man. Duplechin attributed the accident to Bourque's failure to get out of the way.
Oral surgeon John R. Wallace saw Bourque following the accident and said the nature of the injury and the x-rays indicated that it was caused by a blow from underneath the jaw. Dr. Wallace characterized the injury as one that may have been common in football before the use of mouthpieces and faceguards.
While other testimony was presented, both cumulative and contradictory, the evidence summarized above provides a reasonable evidentiary basis for the trial court's conclusions.
There is no question that defendant Duplechin's conduct was the cause in fact of the harm to plaintiff Bourque. Duplechin was under a duty to play softball in the ordinary fashion without unsportsmanlike conduct or wanton injury to his fellow players. This duty was breached by Duplechin, whose behavior was, according to the evidence, substandard and negligent. Bourque assumed the risk of being hit by a bat or a ball. Benedetto v. Travelers Insurance Company, 172 So.2d 354 (La.App. 4 Cir. 1965) writ denied, 247 La. 872, 175 So.2d 108; Richmond v. Employers' Fire Insurance Company, 298 So.2d 118 (La.App. 1 Cir. 1974) writ denied, La., 302 So.2d 18. Bourque may also have assumed the risk of an injury resulting from standing in the base path and being spiked by someone sliding into second base, a common incident of softball and baseball. However, Bourque did not assume the risk of Duplechin going out of his way to run into him at full speed when Bourque was five feet away from the base. A participant in a game or sport assumes all of the risks incidental to that particular activity which are obvious and foreseeable. A participant does not assume the risk of injury from fellow players acting in an unexpected or unsportsmanlike way with a reckless lack of concern for others participating. Hawayek v. Simmons, 91 So.2d 49 (La.App. Orl.1956); Carroll v. Aetna Casualty & Surety Company, 301 So.2d 406 (La.App. 2 Cir. 1974); Roseberger v. Central La. Dist. Livestock Show, Inc., 312 *43 So.2d 300 (La.1975). Assumption of risk is an affirmative defense which must be proven by a preponderance of the evidence, and the record here supports the trial court's conclusion that Bourque did not assume the risk of Duplechin's negligent act.
There is no evidence in the record to indicate contributory negligence on the part of Bourque.
Allstate contends on appeal that there is no coverage under its policy, because its insured, Duplechin, committed an intentional tort and should have expected injury to result.[1] However, while Duplechin's action was negligent and perhaps even constitutes wanton negligence, the evidence is that he did not intend the harm that resulted. The distinction between an intentional tort and one resulting from negligence is summarized in Law of Torts, 4th Ed., by William L. Prosser, at pg. 32, as follows:
". . . the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong."
Duplechin was not motivated by a desire to injure Bourque. Duplechin tried to break up a double play with a reckless disregard of the consequences to Bourque. Duplechin's action was negligent but does not present a situation where the injury was expected or intended. There is coverage under Allstate's policy.
The trial court awarded plaintiff Bourque $12,000 for his pain and suffering and $1,496.00 for his special damages. There is no dispute about the amount awarded. Bourque's jaw was fractured; his chin required plastic surgery; seven teeth were broken and had to be crowned; and one tooth was replaced by a bridge.
There is no manifest error in the trial court's conclusions which we summarize as follows: plaintiff Bourque's injuries resulted from the negligence of defendant Duplechin; Bourque was not guilty of contributory negligence and did not assume the risk of this particular accident; and defendant Allstate did not prove that coverage was excluded under the terms of its policy.
For the foregoing reasons, the judgment of the trial court is affirmed at the cost of defendants-appellants, Adrien Duplechin and Allstate Insurance Company.
AFFIRMED.
CUTRER, J., dissents and assigns written reasons.
CUTRER, Judge (dissenting):
The majority affirms the lower court's judgment against the tortfeasor's liability insurer, concluding that the tortfeasor negligently injured the plaintiff. This writer strongly dissents, basing this disagreement on a finding that the majority opinion has wrongly characterized the tortfeasor's acts as negligent rather than intentional.
As correctly stated in the majority opinion, Duplechin admitted that he ran into the plaintiff in an attempt to prevent a double play. In essence the defendant testified that if the plaintiff did not get out of the way he would run into him in order to prevent the double play. The plaintiff did not get out of the way and Duplechin did run into him. As a result plaintiff received rather severe facial injuries, principally because of the difference in size between the two players; Duplechin was five feet, eleven inches tall and weighed two
* * * * * * * *44 hundred ten pounds, while the plaintiff was five feet, seven inches tall and weighed one hundred forty pounds.
The majority opinion sets forth the distinction between an intentional tort and one resulting from negligence, as follows: ". . . the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent."
In the present case the danger of Duplechin colliding with the plaintiff and causing him injury was more than a foreseeable risk which a reasonable man would avoid. The collision and resulting injury were a substantial certainty, particularly in view of the fact that Duplechin was larger than the plaintiff, was running in an upright position at full speed directly at the plaintiff, and knew he would run over the plaintiff if the latter did not get out of his way. Even though Duplechin may not have intended to injure the plaintiff, he intended an unpermitted contact with the plaintiff, and this constitutes an intentional tort,[1] for which the Allstate policy[2] excludes coverage.
NOTES
[1] The Allstate policy, exhibit D1, provides an exclusion of coverage in the following language:

"This policy does not apply:
"f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured." (TR. 29)
[1] William L. Prosser, Law of Torts, § 9 (4th ed. 1971).
[2] See Footnote 1 of the majority opinion. for other judicial constructions and definitions.